and Mr. Sukoff for the public defenders will hear you. May it please the court, your honors this case presents the issue of whether the district court reversibly erred by enhancing the sentence by four levels for possessing a firearm in connection with another felony offense. In the short time I have, I intend to address the in connection with prong and will rely on my briefs for the other felony offense prong. In fact, I will assume arguendo for this argument that the other felony offense prong is satisfied since the court doesn't need to go there. Mr. Carranza-Maldonado prevails on the in connection with prong in my view. The key to understanding the case is what the facts show and what they do not show. Because what they do not show is going to trigger some language from Jeffries. I know the court's aware with what the facts do show that officers came to the scene based on a suspicious person's call. They saw people getting into a Dodge van. They approached the van. They saw four people. Saw the driver lean down. Got up to the van, smelled marijuana, got the people out, and found a gun under the driver's seat, found marijuana, some in small baggies, some in large baggies under Mr. Carranza's passenger seat. Mr. Carranza-Maldonado was charged with being a felon position, and Mr. Cavazos was charged with possession of marijuana and convicted. Now, here's what the facts don't show, which I think is crucial to Jeffries. They don't show who drove the van to the apartment complex. They don't show whether Mr. Carranza-Maldonado was in the van previously. They don't show who owned the van. They don't show what happened before the four men got in the van. They don't show the relationship, if any, between the men who got in the van. And they don't show who put the drugs in the van or how they got there. Now, against this backdrop, with no back story, what Judge Haynes and the panel said in Jeffries applies. He said where there is a lack of any evidence of current or recent drug distribution or sales of any kind by Jeffries, that the automatic presumption under comment 14B did not apply. That was a rock of cocaine, which was consistent with personal use, not a bunch of baggies. So doesn't it? I mean, you're kind of spotting the other felony, but to me this case rises or falls on whether the other felony is, quote, mere possession or possession with intent to distribute. No, I'm assuming arguendo. Let's just assume arguendo it is possession with intent to distribute. Jeffries still says— Well, if it's possession with intent to distribute, then you do have the automatic presumption. Jeffries didn't have that because it was just this one rock of cocaine, so there was no inference of distribution. But the case stands for the proposition that the person with the gun had no prior history of distribution or sales. If the person with the gun, as I read the case, did have a prior history or recent history or current history of distribution and sales, I read Jeffries as coming out differently. I mean, that's the holding of the case, and that's the language of the case. Quote, a lack of any evidence of current or recent drug distribution or sales of any kind by Jeffries. Well, that was a fact, but if he had had a kilo of cocaine under the seat, the lack of prior history may not have mattered as much. So you have a totality of circumstances in Jeffries, and the point was in Jeffries that the mere fact of a gun and a rock of cocaine in the same car doesn't automatically mean in connection with. I think we can say that. But you have other cases that the mere fact of drugs in the car and a gun in the car doesn't mean that the drugs or the gun were possessed together, like you have Wright. Mr. Wright's in a car, and he has a passenger in the seat, and there's a key to the glove box under the seat. I don't know if it was the drugs or the gun in the car, but one or the other. And this Court held no. Where the other person has control of the contraband, then you can't automatically say Wright had both of those things go together. I mean, that gets to the relevant conduct sort of felony point. I mean, to me, if you are conceding that there was a crime of possession with intent to deliver or to distribute going on, then I think you get the automatic presumption, and I think we're done. I mean, to me, that was the question in the case, but if you're saying that's not, then we're kind of done. Well, I'm not conceding it, Your Honor. I'm assuming it for purposes of argument. I'm not conceding it, number one, because I think Martinez-Lugo was wrongly decided, so I'm definitely not conceding, and I'm at least preserving that for review. I'm just saying that my client wins on the first prong, and you don't need to get to the second prong. On Martinez-Lugo, I read your 28J letter. It seems to me you may be conceding too much because here I think it's pretty clear that the state statute that was relied on by probation in the PSR was not sufficient. But then there's this argument, well, but it's a federal—it's arguably a federal possession with intent to distribute. And if you're in the federal statute, then there is this misdemeanor exception if it's not for being exchanged for money, whereas in Martinez-Lugo, the issue—it didn't have to be a federal drug felony. It could just be the generic drug felony. So why does Martinez-Lugo— Well, I may have misspoken in my letter. What I meant to concede was the fact that Martinez—and in my—as I said in my 28J letter, I overlooked the government's footnote. And so my reply brief talks about, well, there's still no showing remuneration or payment. And so what I was trying to say in my 28J letter was the government's correct. Martinez-Lugo does hold that you don't need remuneration. And if I didn't state it clearly, that's what I was saying, that there is a Fifth Circuit case on point that remuneration is not needed. For the generic drug offense but not for the federal statute, there is a—you need remuneration to be a felony under the federal drug statute. Right first. Correct. Your Honor, let me go back to a case like Mergerson. Mergerson, there's a drug crime going on, and there's— Can you tell—I mean, I honestly find this argument completely way off what I was thinking we were going to be. So I feel like I must be missing something. What is your point? Tell me your point. Why does your guy win? My guy wins because there is no evidence that he was involved with any drug distribution or trafficking at any time. And Jeffrey says you need that for the presumption to apply. Otherwise, comment 14A and 14B collapse into one thing, and there is always a presumption. There is no evidence that my client was involved in any drug distribution before, during, or after. So you can't just say— So your argument is that even if the guy in the passenger seat was possessing with intent to distribute, that your client was not a party to that or in a conspiracy or aiding or abetting that. There's no evidence of that at all. Okay. All right. That's getting closer to what I thought the argument was going to be about. In my head, that's the other felony is what is your client's conduct. What is he doing? Because that's the other felony that I think is relevant. Is he committing another felony? So why don't you talk about that. How do we link or not link your client with the drugs under the seat? Because we know there's a smell of marijuana. We know it's under the seat of his car that he's controlling the car, so to speak. And we know that it's kind of in baggies and whatever, which is sort of inconsistent with just the personal stash of the guy in the passenger seat. So tell me why that's not enough to get him as part of this deal. Thank you, Your Honor. That's why I think it's so important what is not in the facts. You say he's controlling the car. The evidence is he got in the passenger seat and was arrested. So the smell would have been instantaneous. I mean, he got arrested. If you get in the passenger seat. I thought he was in the driver's seat. Sorry. He was in the driver's seat. He's controlling the car. The guy who's driving is controlling the car, in my experience, but maybe not always. Maybe if everybody's high, no one's controlling. But that doesn't show that's his relevant conduct or he has any connection. It shows he's getting in the car that has marijuana in it when he enters and getting arrested instantaneously. It's not like the government's cases where somebody drives a tractor-trailer up to the checkpoint. They've been driving it for an hour or two. Marijuana's wafting through there, and he has to know it. My client gets in the car. There's the smell of marijuana. He's arrested. So there's absolutely no time for him to conspire, to aid and abet, to further. There's no showing it's reasonably foreseeable there's marijuana in the car. There's no showing he was ever in the car before. There's no showing who owns the car. There's no showing who had the car keys before they got in the car. That's why it's so important what the facts do not show. They show my client getting in the car, the police approaching and arresting him. So we can assume all kinds of things. We can say he had control of the car. Well, he got in and was arrested. We could assume that he smelled it instantaneously, but he had no time to do anything about that. I mean, you have to speculate about what was going on beforehand in order to connect him to the drugs. And if you don't speculate, you have a person sitting in the driver's seat and leaning forward. And the smell of marijuana in the car as he gets in and leans forward and then gets arrested. Everything else is just speculation, Your Honor. Well, if it's not his car, aren't they breaking and entering? You're saying it was just a nearby car they went into because the police were after him? I'm saying there's no evidence in the record as to whose car it is. It could have been one of the other person's car. They could have come to the apartment and said, hey, you drive. I mean, it could be anyone's car. But the government has the burden to show a connection between him or the gun and the drugs. And on the record, on the factual basis for the guilty plea and on the offense conduct, there's no showing of that. That's all I'm saying. I have no idea whose car it was because there are no facts as to that. I have no idea who had the car keys because there's no facts to that. All I know is the record shows my client sat down in the car, leaned over, there was marijuana under the seat, and got arrested. And the police smelled marijuana. So there's no evidence he was aiding and abetting. There's no evidence it was reasonably foreseeable. There's no evidence he was conspiring. And there's nothing there to apply the presumption to. Your Honors, if there are no further questions, I'll reserve the rest of my time for rebuttal. Thank you, Mr. Sokolov. Ms. Clurie. May it please the Court, Anna Clurie on behalf of the United States. Going to the—we ask this Court to affirm the judgment and the sentence based on the fact that the defendant was possessing with intent to distribute the marijuana. Going over the facts briefly, he gets into a vehicle. He places the firearm, the loaded firearm, underneath his driver's seat. His passenger has two baggies of marijuana. And then he was arrested immediately? The officers come—they receive a call. They come to the parking lot. They see the four occupants get into the vehicle. As they're walking over, they see the defendant put something underneath his seat in the driver's seat. They approach, rolls down the window. The odor of marijuana comes out, and that's when they ask everyone to get out of the car. So it is rather quick, but there is time for them to obviously get into the car, put things in their seats. They have time to get in the car, but if he's not driving it, then how is he—and he does an owner. At least there's not proof that he does. How is he in control of the passenger seat? The whole idea about connecting the drugs is his control of the car. At least that's a part of the idea. Yes, Your Honor, it is. And I think here we have to go back to the fact that this is a sentencing enhancement, and it's a preponderance of the evidence. And here he gets into the driver's—the car. He gets into the driver's seat. He puts the loaded firearm underneath the driver's seat. I think the presumption and the reasonable interpretation from that is that they are going to drive somewhere. He brings his firearm into the car. They come out. So we've established that he has control of the gun, and he's going to drive somewhere. But the idea that he—you know, you have all these compartment cases where this guy drives around with a load, as your opponent mentioned, all over town or whatever, and it's unlikely he didn't realize that he had all this stuff in his truck or whatever, whatever. But here he has no opportunity to know what's underneath the passenger seat if he just got in the car. So how do we connect him? Let's put it this way. How do we connect him to what's under the passenger seat? We know there's a smell of marijuana, but the smell of marijuana could be mere possession of one joint. It could smell of a car, right? Presumably. Okay. You're not going to concede that? Fine. We can imagine that. So that—now he's sitting in a car that smells of marijuana with a gun under the seat. How do we connect him to what's going on in the passenger seat? I mean underneath the passenger seat. It's not out in the open on the console and all this other stuff. Well, I think that by getting into the driver's seat, he is taking control because the reasonable inference from that is that he is taking control of the car. He got into the driver's seat. Okay, but that's almost like a strict liability offense for him. You're saying merely by jumping in the driver's seat, he now becomes responsible for everything that's in the car, under the seat, everywhere. And what case says that? I don't believe it's a strict liability, but I think here you have the defendant getting in, and he's putting a loaded firearm underneath his seat. That evinces an intent to stay. He didn't go in, smell something, and hop right back out. He got in. And remember, there's a strong smell of marijuana in here. The reasonable inference is not that it's just one joint, that there's something more there. He gets in with a loaded firearm underneath his— You know, I'm not a specialist in marijuana, so maybe you can help me with this. I didn't think that marijuana that's not being burned— Well, this is an area you prosecute in, I assume. Okay, so you're saying that marijuana that's not being burned, that's sitting in baggies, is going to smell? Yes, Your Honor. Sitting under the chair, it's going to smell? Yes, Your Honor. Okay, and so that's the smell that was being smelled? The facts that the defendant pled to and in the PSR just say a strong odor of marijuana. There's no indication that it is unburnt, that it is fresh, or that it is burnt. Being that they found baggies of fresh marijuana in there, I think a reasonable assumption and a reasonable interpretation from that is that it is the smell of fresh marijuana. But that's not said anywhere. So we don't know if it's one joint in a closed car that's being smoked. We don't know if it's this baggies. We don't know what kind of smell. I mean, you've got to help me with this, the different kinds of smells that it might be. I will concede that there is the possibility that it could have been burnt, or it could have been fresh marijuana for the smell. However, I think the reasonable interpretation, given that there wasn't a burnt joint there, there wasn't any evidence of anything having been used in the vehicle, and the evidence that we do have is two bags of 100 grams of marijuana. One bag has 12 individually wrapped bags. The other one has a large bag with loose marijuana in it. That is what is in the car. So I believe the reasonable interpretation from that by preponderance of the evidence is that the scent, the odor of marijuana, was the fresh scent of marijuana. I learn something new every day. Given that he . . . Again, I don't see how you make that assumption when we don't know whose car it was and everybody says they just jumped in the car, they were there for less than five minutes or even three minutes. Well, it's true that we don't have an exact . . . We're making a lot of leaps here. I don't believe it is a lot of leaps. The defendant gets into the car. He gets into the driver's seat. He is intending to exercise control over this vehicle. Not only does he get into the driver's seat, he takes his loaded firearm and puts it underneath the driver's seat. A reasonable assumption from that is that he's getting into the car, he intends to take control of the car, and that he's going to use the car in some way, presumably by driving. And I agree with that. I still am having trouble connecting him to what's underneath the seat. I mean, we have all these cases with the console and whatever, whatever, where you could see it, and I just don't know enough about this smell to understand . . . I mean, this today is the first I'm hearing or understanding that the smell, the significance of it is that it's underneath the seat as opposed to being smoked or having been smoked in the car. Because what do we know about the car before? Were people in it before? I mean, for example, if you smoke a cigarette in a car, that car is going to smell for a while and not just immediately the moment that you're smoking it. So . . . I understand. We know nothing about the car before they get in. There's no facts in the evidence there. But I'd like to . . . So if he jumps in the car and he smells marijuana, why does that show him that he's now participating in possession with intent to distribute marijuana? That's what I guess I'm trying to get to. He smells it. Okay. Why does that suddenly make him part of this aiding and abetting or conspiracy or whatever he needs to be to be another felony? Well, I think you need to look at the totality of the circumstances here. And, again, it's a preponderance of the evidence. You have four men who come and they get into one vehicle. The defendant goes into the driver's seat. He puts his loaded firearm underneath the seat. He has his defendant, he has his passenger, who has the marijuana, which is packaged for distribution, underneath his seat there. Do we know when that was placed underneath the passenger's seat? We don't know that, Your Honor. But I would suggest that either interpretation, either it was already in the car, and this is a car that the defendant takes possession of and control over, and he takes control over that as well, or . . . How important to your case is the smell of the marijuana? I'm sorry, Your Honor? How important to your case and your argument is the smell of marijuana? Are you relying primarily on the fact that he got into the driver's car, placed the gun under the seat in which marijuana was found? How important is the smell of marijuana to the driver to attribute knowledge to him of the offense? I believe it's very important, Your Honor, because it does go to the knowledge of the marijuana in the car. I agree that that is a fact that the government needs to . . . If we decide that there's no evidence here that he smelled marijuana and that that cannot be accounted for in the evidence against the defendant, do you lose? Yes. In that hypothetical, I think we would. But I think it's different here in that . . . Tell me how important it is. Yes, Your Honor. It's crucial. It is crucial. And here you have the defendant, when he pled to the offense, he pled to the facts that say there was a strong odor of marijuana in the car. In addition, the PSR, which was unrebutted, also says that there's an odor of marijuana in the car. And I think that the judge was correct in relying on that and adopting that fact as accurate. And I'd like to point this court to United States v. Lopez. We still have the problem of what odor of marijuana means. Does it mean somebody smoked a marijuana cigarette in the car at some juncture within the recent past, or does it mean this, as you say, the smell of fresh marijuana? We've kind of quipped that. Do you have another argument to make? Yes. If I could just point the court to United States v. Lopez, which is a 1996 case out of this court. There the defendant was driving a vehicle, and there was an odor of marijuana. It was a number of packages that was hidden in the back seat. And this court held there that the smell of marijuana, that the defendant had knowledge of the hidden marijuana because the odor was present in the passenger compartment of the car that he was driving. So there the connection of the smell of marijuana did link up to the defendant having knowledge that marijuana was in the car. Even in there, it was in a hidden compartment in the back seat. Here we have readily accessible marijuana underneath the front seat. The defendant could reach it. It's not in a hidden compartment, and there is the smell within the compartment of the vehicle which shows knowledge. Because this was a drug trafficking offense, the presumption applies, and the four-level enhancement was proper. Okay. That's about what you have to say, isn't it? Thank you very much. Yes, indeed. Okay, Mr. Sokoloff. Thank you, Your Honor. In rebuttal, just with regard to the odor of marijuana, I just have two points. Number one, it doesn't matter because he just sat down in the car. There's nothing to be done about it. He sits down and gets arrested. Number two. Well, I mean, if you disregard the fact that he put his own gun under the seat of the car and was getting into the car where there was marijuana that was packaged to be sold, that is fairly strong evidence. It's evidence that he possessed the gun, Your Honor. It's not evidence that he had anything to do with the marijuana. Well, I mean, that's what you say, but I don't know. You haven't made me know that yet. Well, there's no evidence in the record to support that he had any connection to marijuana. I mean, as I say, I wasn't born yesterday. I can make reasonable inferences from certain facts. Well, then the reasonable inference is he saw the police approaching, leaned down, and put the gun under the seat. Why isn't that a reasonable inference? Well, it is from your point of view, but it's not the only point of view. You haven't got a . . . Well, I don't have the burden, Your Honor. The government does. I understand that, but neither do you have a copyright on the interpretation of the evidence. No, but I know that the court can't speculate either, Your Honor. How do you distinguish Lopez? I'm sorry. She cited the case of United States v. Lopez as saying that if you smell marijuana in your car, then you're in on it. I think the cases that the government cites are people who are driving the car for a matter of time, not people who . . . Well, how long do you have to drive the car with the smell of marijuana in it before you're responsible for what's in it? Long enough to be able to do something about it. I mean, if you come out to your rental car and you sit down in it and you smell marijuana and get arrested, it doesn't show you have any connection to the car. Did the defendant say anything to the police at the time he was arrested? No. Nothing in the factual . . . Was he asking any questions? Was he what? Asked any questions. I don't believe that's in . . . There are no admissions about him being involved with the marijuana, if that's what you're asking. Now, with regard . . . The presence of a loaded gun is certainly not dispositive, but doesn't our case law say that's one factor, given the connection between guns and drugs, that when there's drugs in the area and you're found with a loaded gun, that that might make it a little more likely that you're involved with that drug trafficking? Because it's undisputed. I mean, he obviously pled guilty. He had a loaded gun. Right. Given that these drugs are nearby, isn't it just one factor, but one factor among many, that can be considered in determining whether he's connected to those drugs? Because drug dealers often have not just guns, but loaded guns with them. I don't think so, because then the commentary in the guidelines don't need to make any distinctions. Then you just say, if there's a gun, whether he was involved with the drug trafficking or not, he gets the enhancement. Not that it's dispositive, but that it's one factor that can be considered in determining whether he's connected to the guns. I think that just renders nugatory the commentary under the guidelines. Because if he has a gun and there are drugs, that's the end of it for getting in connection with. There doesn't need to be a connection with if there's a gun and drugs, is what you're saying. But the language of the guidelines. You look at the gun, you look at the odor, you look at all these issues, part of this totality. But I get your position. Now, the other thing I wanted to point out to the court, I guess as a service to the court or to be candid, you were asking about whether it was someone that smoked, it was burnt marijuana or the baggies. Just to let the court know, on page 124 of the record, at the sentencing, it's page 5 of the transcript, 5th Circuit, record number 124, the prosecutor does say, and also in conjunction with the fact, that he had the odor of burning marijuana in the vehicle. So I'm just letting you know that that is, I don't, the factual basis and the offense conduct in the PSR just say odor of marijuana. But I just wanted to point out to the court that the prosecutor did say at the sentencing on page 124, burning marijuana in the vehicle. Your Honor, if there are no further questions, I just ask that you vacate the sentence. Can I just ask you, was there, you mentioned that maybe, you kind of suggest that maybe he's sort of trying to hide the gun from the police, is why he puts it under the seat, that he sees the police. Is there any evidence that as they're getting in the car, they see the police, and so then everybody's scrambling to hide whatever, because he's a felon in possession, he knows if he's found with a gun, he's in trouble. Is that, and is there evidence of that, or is that your surmise? No, what I was saying is we can surmise. That's another inference. Well, speculation or whatever. I would call it not an inference, but speculation, and we can speculate to a lot of things. That was my point, Your Honor, and thank you for helping me to clarify that. Thank you, Your Honor. Thank you.